IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA    )
         )
         )    No.  4:08CR40020-001
V.        )
         )
         )
BERNIE LAZAR HOFFMAN    )
a/k/a TONY ALAMO    )

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Comes now the United States of America, by and through Deborah Groom, Acting United States Attorney for the Western District of Arkansas, and for its response to the defendant's motion to suppress (Document 80) filed herein, states:

## PROCEDURAL AND FACTUAL HISTORY

The defendant was arrested on September 25, 2008, on an arrest warrant that was issued by the Court after the United States filed a criminal complaint against the defendant. (Document 1). The Grand Jury for the Western District of Arkansas later indicted the defendant in a two-count indictment that was filed on October 1, 2008. (Document 4). Later, the Grand Jury for the Western District filed another indictment against the defendant; this superceding indictment contained ten counts against the defendant, alleging that the defendant took or was aided and abetted in the taking of minor females across state lines for the purpose of initiating or maintaining an unlawful sexual relationship with them. (Document 33). Finally, the Grand Jury issued another superceding indictment, which contained the same number and types of counts against the defendant, but this time changed one of the dates of the alleged criminal violation. (Document 71). This case is currently set for a jury trial on July 13, 2009 in Texarkana, Arkansas. On June 23, 2009, the

defendant, through his attorneys, filed a motion to suppress and a memorandum in support of the motion to suppress. (Documents 80, 81).  In the motion, the defendant alleges that the search warrant sought, obtained, and executed on September 20, 2008 by a Special Agent with the Federal Bureau of Investigation was invalid and should not have been signed by the Federal Magistrate Judge in this case.  The defendant alleges that the Court should suppress the evidence recovered as a result of the execution of the search warrant for the following alleged violations:

1) The search warrant does not contain probable cause because the information contained therein is "fatally stale;" and,

2) The search warrant does not contain sufficient probable cause because the affiant for the search warrant failed to provide an averment for the credibility of the informants.

The Court should deny the defendant's motion to suppress in this case, as a clear reading of the search warrant and affidavit in support show that the warrant contained sufficient probable cause to justify the search and that the information contained in the search warrant was not "fatally stale" as the defendant claims.

## ARGUMENT

As an initial consideration, the Court should deny the defendant's motion to suppress because there is a significant question as to whether the defendant has the proper standing to object to the search at issue in this case.  Should the Court determine that the defendant's standing is not an issue in this case, then the Court should still deny the defendant's motion to suppress in this case without an evidentiary hearing because the defendant's motion is not sufficiently specific, definite, detailed, and nonconjectural to merit a hearing on the matter.  The Eighth Circuit Court of Appeals has consistently held that "Evidentiary hearings need not be set as a matter of course, but if the

moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required."  United States v. Losing, 539 F.2d 1174, 1177 (8th Cir. 1976).  In Losing, the Court of Appeals was presented with a case not unlike the issue that is the basis of the defendant's motion to suppress.  Losing involved a challenge to a wiretap order and its supporting affidavit.  The defendant argued that the lower court should have suppressed the evidence obtained as a result of the wiretap because of allegations that the affidavit did not contain sufficient probable cause.  The lower court denied a motion to suppress without an evidentiary hearing.  The Court of Appeals agreed with the decision regarding the probable cause arguments, and noted specifically: "Each of the allegations contained in paragraphs 4 and 5 of the motion contests the facial validity of the wiretap application and order.  Such matters do not require a hearing for the simple reason that facts not recited in the application or order have no bearing on the facial validity of the application and order."  Id. at 1179.  In the case at bar, the defendant only makes conclusory allegations as to the lack of probable cause in the affidavit due to an alleged "staleness" issue and an issue regarding an averment of the credibility of informants.  As in Losing, these arguments only question the facial validity of the search warrant and do not mandate that an evidentiary hearing should be held, as they may be resolved by a plain, clear reading of the search warrant and the supporting affidavit.

With regard to the actual merits of the defendant's motion, however, the Court also should deny the defendant's motion to suppress because a plain reading of the search warrant and supporting affidavit reveals that there was ample probable cause to support the magistrate's decision to approve the search warrant application and issue a search warrant and that a "fatal" staleness issue

is not present in this case.  In addition, the Court should also deny the defendant's motion because the search warrant contains ample information to demonstrate the credibility of the informants. Should the Court determine in the alternative, the Court should still deny the defendant's motion to suppress because the agents for the FBI acted in good faith in applying for and executing the search warrant in this case.

**I.  There is a Significant Question as to Whether the Defendant has the Requisite Standing to Challenge a Search of 100 Circle Drive in Fouke, Arkansas.**

In his motion to suppress, the defendant asserts that his right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment to the United States Constitution was violated in this case by a search of a residence at 100 Circle Drive in Fouke, Arkansas.  However, there is significant evidence in the form of sworn testimony that the defendant has no standing to challenge such a search.  Although the government believes that the defendant does reside in and control the residence at issue in this case, the defendant recently testified under oath to the contrary. The defendant testified on November 24, 2008 in Miller County Circuit Case Number JV-2008-261-1 that the following was true regarding the residence in question:

Q: You were not living in Fouke [when you were arrested]?

A: No, I was not living in Fouke.

(Attachment "A", filed under seal[1] Tr. at 11).

Q: Uh-huh.  So they do, if some of them have said that they live in your home?

A: Yes.

---

[1]The Government is providing Attachment "A" to the Court and defense counsel separately from this Response via regular mail the date of the filing of this Response because Attachment "A" is the transcript of defendant's testimony before the Honorable Joe E. Griffen on November 24, 2008 in the Circuit Court of Miller County, Arkansas, in Case No. JV-2008-261-1 which identifies minors.

Q: You say, yes, they do?

A: Yeah.

Q: Okay.

A: In different rooms and dorms.  There's a dorm in there.  It's not my home.  Again, I am telling you it's a church, a mission.  It's a mission and school and office and then there is bedrooms in there.

(Attachment "A", Tr. at 35-36).

Q: Okay.  So those are areas, those are outposts where people live in church property?

A: Yes.  That is not church properties.  They are privately owned.  I don't own anything and the church doesn't own anything.

(Attachment "A", Tr. at 19).

It would appear to be clear from the defendant's testimony that he claims no residence, or ownership regarding the property in question in this case.  According to well-established case law from the Eighth Circuit Court of Appeals and the United States Supreme Court, the defendant has the burden of showing that he has standing to challenge a search under a Fourth Amendment claim. As stated by the Court of Appeals: "In order to show a legitimate expectation of privacy in the searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." U.S. v. McCaster, 193 F.3d 930, 933 (8th Cir.1999)(citing Minnesota v. Olson, 495 U.S. 91, 96-97 (1990)).  In addition, the United States Supreme Court has previously held that Fourth Amendment rights may not be asserted vicariously.  United States v Payner, 447 U.S. 727, 731 (1980).  In McCaster, the court noted that "Several factors are relevant to this showing: whether

the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." McCaster, 193 F.3d at 933.  It should also be noted that in addition to not making any statements or showing that the defendant has a privacy interest that stems from some other source, the defendant also cannot show that he has any legal ownership of the property in question.  A search of the public records regarding 100 Circle Drive in Fouke, Arkansas, reveals that, at the time the search warrant was executed, the residence was not owned in the defendant's name, but rather was owned in the name of Angela Morales.  This information, coupled with the defendant's sworn testimony noted above, shows that the defendant has certainly not met his burden of demonstrating that he has standing to object to the search in this case.  As a result, the Court should deny the defendant's motion to suppress.

## II.  The Information Contained in the Application for and Affidavit in Support of the Search Warrant Demonstrates Sufficient Probable Cause.

The Defendant alleges in broad strokes in his motion to suppress that the affidavit does not contain sufficient probable cause.  However, a plain reading of the affidavit requires a different conclusion.  The defendant's motion contains several paragraphs devoted to analyzing each paragraph of the affidavit in support of the search warrant and following each analysis with a broad, conclusory allegation that the paragraph "provides no requisite probable cause."  The defendant ignores clear precedent from the Court of Appeals that search warrants and their affidavits must be viewed "as a whole" and not on a "paragraph-by-paragraph" basis.  See United States v. Anderson, 933 F.2d 612, 614 (8th Cir.1991).  It is clear that, when taken as a whole, the affidavit does in fact contain the requisite probable cause necessary to justify the issuance of a search warrant.

In addition to the paragraph-by-paragraph analysis contained in the defendant's motion, the

accompanying memorandum sets forth the argument that the Court should suppress the search warrant because the information purporting to establish probable cause is "fatally stale."  The defendant argues that the information provided by the informants, upon which a portion of the probable cause affidavit is based, was too far removed in time to be considered adequate to help establish probable cause.  The Court of Appeals has previously noted that "[a] delay in executing a search warrant may make the probable cause fatally stale, but the lapse of time is not always the controlling factor."  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995).  In other cases regarding the "staleness" issue, the court has noted that "[t]here is no bright-line test for determining when information is stale."  United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993).  Finally, the Court of Appeals has also held that "...the nature of the criminal activity under investigation must be considered." See e.g. United States v. Comeaux, 955 F.2d 586, 589 (8th Cir. 1992).

In the case at bar, the affidavit in support of the search warrant contains a large amount of information from four unnamed informants or sources.  The information from the first three informants, who were all under the age of eighteen, comes from their own personal knowledge as victims of the defendant's criminal activity.  All three of these informants related information regarding the defendant's production and possession of child pornography.  In addition, many of the other statements by the informants-sources listed in the affidavit provide a basis for the conclusion that the FBI was investigating a person with pedophile tendencies.  As noted above, the type of investigation has a bearing on the question of the timeliness of information supporting a search warrant.  Several courts have noted that the fact that pedophiles typically retain pornographic material for long periods of time is a factor to be considered in a "staleness" probable cause determination.  See United States. v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992)(holding that the

tendency of pedophiles to retain child pornography for a long period of time minimized lapse of time between information in the affidavit and execution of the search warrant); United States v. Maxim, 55 F.3d 394, 397 (8ᵗʰ Cir. 1995); United States v. Byrd, 31 F.3d 1329, 1339 (5ᵗʰ Cir. 1994).  The affiant to the search warrant application also relates that his training and experience lead him to the same conclusions about the nature of pedophilia and child pornography cases: "...individuals involved with the sexual exploitation of children through child pornography always keep copies of their sexually explicit material for long periods of time, especially when they are used in the seduction of children." (Document 7-1, pages 11-12).  The information contained in the affidavit in support of the search warrant may cover a significant time span, but based on the type of case that the FBI was investigating and the Special Agent's training and experience, the time span was not unreasonable and the Magistrate was certainly justified in relying on the information to find probable cause to issue the search warrant.

In addition, according to paragraph 16 of the affidavit in support of the search warrant, one of the confidential sources of information related that there were as many as eight underage girls living in the home that was the subject of the search in this case.  (Document 7-1, page 10).  The confidential source also related that they had seen the defendant go into his bedroom alone with these girls, in a similar situation that was reported by the victims of this case.  There is no question that the affidavit provided information that provided a basis for the Magistrate to conclude that there was on-going criminal activity in the house that was the subject of the search warrant.  In Rugh, the Court of Appeals noted that in the case of information relating to on-going criminal activity, the passage of time between the receipt of information and the search becomes less critical.  Rugh, 968 F.2d at 754.

While the affidavit in support of the search warrant does contain information that spans a significant time period, the information is not fatally stale. Some of the information relates to child pornography, which the court should treat differently from other types of cases, and, as noted above, this should minimize the lapse of time between the information and the execution of the search warrant. In addition, although some of the information does span a considerable time frame, much of the information contained in the affidavit is relatively recent. The informant identified as "juvenile number 3" provided information that she had been sexually abused by the defendant about one year prior to the search warrant in this case. In addition, the confidential source also related that there were approximately eight underage girls living in the house with the defendant at a time near the execution of the search warrant. All of these factors taken together show that there was more than enough probable cause to justify the search warrant and the corresponding search at issue in this case.

### III. The Affidavit in Support of the Search Warrant Provided Sufficient Information for the Magistrate to Determine the Credibility and Reliability of the Informants.

The defendant's second argument in support of his motion to suppress asserts that the affiant for the affidavit in support of the search warrant in this case did not provide sufficient information to support the credibility of his sources of information. To support this argument, the defendant states in his memorandum that "[a]ffidavit is required to establish the reliability of the informant by reciting that he or she "had given reliable information in the past" or through the use of current, corroborating evidence." To that end, the defendant cites U.S. v. Hundley, 567 F.2d 822 (8th Cir.1977). However, the Court of Appeals actually noted in Hundley that the affidavit is *not* required to contain the information the defendant asserts it must. In fact, the Hundley court noted

the following:

> "In cases where the affidavit does not contain sufficient information as to the reliability of the informant, other factors have been held to provide a substantial basis for crediting the hearsay. The informant's reliability may be established by the fact that the tip includes a statement against the informant's penal interest. See <u>United States v. Harris</u>, <u>supra</u>, 403 U.S. at 583, 91 S.Ct. 2075; <u>United States v. Long</u>, 449 F.2d 288, 293 (8th Cir. 1971), <u>cert.</u> <u>denied</u>, <u>Tocco v. United States</u>, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972); <u>United States v. Rosenbarger</u>, 536 F.2d 715, 719 (6th Cir. 1976), <u>cert.</u> <u>denied</u>, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). Independent corroboration of the informant's tip may also provide a basis for finding probable cause where the reliability prong of the Aguilar test is not otherwise met. See <u>United States v. Brand</u>, 556 F.2d 1312, 1318 (5th Cir. 1977); <u>United States v. Fluker</u>, 543 F.2d 709, 714 (9th Cir. 1976). **Under certain circumstances, there may also be "built-in" credibility of the informant when a victim's or other innocent eyewitness' account of a crime provides the basis for a finding of reliability of the informant by the magistrate.** See <u>Cundiff v. United States</u>, 501 F.2d 188, 190 (8th Cir. 1974); <u>McCreary v. Sigler</u>, 406 F.2d 1264, 1269 (8th Cir.), <u>cert. denied</u>, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). <u>See</u> <u>also</u> <u>United States v. Swihart</u>, 554 F.2d 264, 268-69 (6th Cir. 1977); <u>United States v. Burke</u>, 517 F.2d 377, 380 (2d Cir. 1975); <u>United States v. Bell</u>, 457 F.2d 1231, 1238-39 (5th Cir. 1972); <u>United States v. Mahler</u>, 442 F.2d 1172, 1174 (9th Cir.), <u>cert. denied</u>, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971).

<u>Id.</u> at 825 (emphasis added).

In the case at bar, the affiant did not name the four sources of information.  This was in part due to the fact that three of the sources of information were under the age of eighteen years old at the time the affiant applied for the search warrant in this case.  However, it is clear from the defendant's own case cite that the affiant was not required to name the sources of information in the affidavit, and that there are other ways for the magistrate to satisfy the requirement that the information came from reliable sources.  In <u>McCreary v. Sigler</u>, 406 F.2d 1264, 1268 (8th Cir.), the Court of Appeals noted that there are "many collateral ways" that reliability may be demonstrated

to the magistrate.  One such way was addressed in <u>United States v. Stevens</u>, 530 F.3d 714, 718-719 (8th Cir.2008).  In <u>Stevens</u>, the court was presented with a case in which the defendant was convicted of conspiracy to distribute cocaine after a search of his residence uncovered approximately four thousand (4,000) grams of cocaine.  The defendant's own adult daughter was the source of information for the affidavit in support of the search warrant.  On appeal, the defendant argued that the affidavit was inadequate because it lacked explicit information regarding the reliability of the informants.  <u>Id.</u> at 717.  In upholding the search warrant in that case, the Court of Appeals noted that: "[t]he issuing judge could conclude that the daughter had a strong basis of knowledge that cocaine would be found in Steven's home because he had shown her that it was there."  <u>Id.</u>  In addition, the Court of Appeals cited a reference to the seminal United States Supreme Court case on this issue, <u>Illinois v. Gates</u>, 462 U.S. 213, 234 (1983), where the <u>Gates</u> court noted that "...an informant's...explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case."

In this case, all four of the sources of the information contained in the affidavit were first-hand witnesses to the information that they provided to the affiant.  In addition, three of the sources were actual victims of the defendant's criminal activities.  Just as the Court of Appeals noted in <u>McCreary</u>, that an informant who alleges he or she is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person, this Court should also find that the sources of information for the affiant's statements have certain built-in reliability that requires no additional information.  <u>McCreary</u>, 466 F.2d at 1269.  The defendant's misplaced reliance on <u>Hundley</u>, coupled with the fact that the magistrate could find the informants reliable based on their detailed, first-hand account of the facts should lead the Court to deny the defendant's motion to suppress the evidence

recovered from the search warrant based on a lack of averment of credibility for the informants.

## IV.  The FBI Agents Acted in Good Faith in the Application for and Execution of the Search Warrant

Even if the Court finds that the search warrant in this case was not supported by probable cause, the evidence recovered from the execution of the search warrant should still be admissible in trial.  In United States v. Leon, 468 U.S. 897, 922 (1984), the United States Supreme Court held that the exclusionary rule will not bar evidence obtained pursuant to an invalid search warrant unless the magistrate who issued the warrant abandoned his or her neutral and detached role in issuing it, or unless "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.".

In this case the officers were clearly not reckless or dishonest in the preparation of the affidavit, nor does the defendant make any such assertions in his motion.  The only two questions raised by the defendant regarding the search warrant in this case revolve around the time that elapsed between when the informants learned of the information contained in the affidavit and the when the search warrant was executed, and the reliability of said informants.  Neither of these issues has any bearing on whether the officers acted in good faith in this case.  The officers certainly could have reasonably believed that there was contraband in the residence located at 100 Circle Drive in Fouke, Arkansas.  As noted above, several courts have adopted the proposition that pedophiles typically demonstrate the propensity to hoard and collect items of child pornography.  In addition, the informants reported substantial information that represented on-going criminal offenses.  With regard to the reliability of the informants, the officers also could have reasonably relied upon their statements.  Although the affiant did not name the informants in the affidavit, that does not mean

that the informants were anonymous.  In fact, all four of the informants met with the affiant and related their information in person.  In addition, their credibility and reliability was enhanced by the fact that all four were relating information regarding events that they actually witnessed.

It is clear that, even if the Court finds the search warrant in this case invalid, the evidence recovered should not be suppressed because the agents acted in good faith with reasonable, objective reasons why both the information and the informants in this case were credible and reliable to establish probable cause.

## **CONCLUSION**

The Court should deny the defendant's motion to suppress in this case without an evidentiary hearing.  The defendant has made only conclusory allegations regarding his challenges to probable cause in the search warrant, and has not alleged a factual dispute or inconsistency that would require an evidentiary hearing.  The Court should also make a specific finding that the information contained in the affidavit in support of the search warrant was not "fatally stale".  This is due to the nature of the investigation, the type of crime alleged to have been committed, and the fact that the information related to an on-going criminal offense.  The Court should also find that the informants in this case were sufficiently reliable for the Magistrate to find that probable cause existed to support the issuance of the search warrant.  This is due to the fact the informants were eyewitnesses to the criminal conduct, and thereby have built-in credibility due to the nature and detail of the information they were able to provide.  The Court should also deny the defendant's motion to suppress because the defendant has not met his burden of demonstrating that he has the proper standing to assert a Fourth Amendment violation.  The rights established under the Fourth Amendment may not be asserted vicariously, and the defendant has previously testified under oath that he does not own and

was not living in the residence that was searched in this case.  Although the government believes that the defendant still exercised control over the residence, it is the defendant's burden to demonstrate a legitimate privacy interest, which he has not met in this case.  Finally, even if the Court makes a finding that the search warrant was invalid, the evidence recovered should still be deemed admissible at trial because the officers acted in good faith in their reliance on the information provided based on both the nature of the charge and their own experience in dealing with cases involving pedophiles.  In addition, the officers reasonably and objectively could have believed the information provided by the informants based on the fact that each one was a purported eyewitness to criminal conduct.

For all of these reasons, the government respectfully requests that the Court deny the defendant's motion to suppress in this case.

Respectfully submitted,

Deborah Groom
Acting United States Attorney

By:  /s/ Clay Fowlkes

Clay Fowlkes
Assistant U.S. Attorney
Arkansas Bar No. 96154
P. O. Box 1524
Fort Smith,  AR  72902
479-783-5125

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing electronically to:

Jeff Harrelson
Don Irvin

/s/ Clay Fowlkes

Clay Fowlkes
Assistant U.S. Attorney