IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:08CR40020-001 |
| v. ) | |
| ) | |
| BERNIE LAZAR HOFFMAN, ) | |
| also known as TONY ALAMO | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL

Comes now the United States of America, by and through United States Attorney Deborah Groom, and files its response to Defendant's Motion for New Trial (Document 109) and states as follows:

### I.   PROCEDURAL AND FACTUAL BACKGROUND

Defendant was charged in a second superseding indictment with transporting five minor females across state lines between 1994 and 2005 for the purpose of engaging in illegal sexual activity with the minor females, in violation of 18 U.S.C. §§ 2423(a) and (2).  (Document 71).

Prior to trial, Defendant filed a Motion to Suppress (Document 80) that was denied. (Document 96).  Defendant's motion requiring the government to reveal the identity of two informants (Document 82) was denied.  (Document 96).  Defendant's request that the government disclose law enforcement agents' original interview notes was also denied. (Documents 77, 96).  The Court denied Defendant's request to inspect counseling records of three government witnesses.  (Documents 77, 96).

A jury trial commenced July 13, 2009.  (Document 97).  Twenty five witnesses testified, including the five young women named as a "Jane Doe" in the second superseding indictment. Each Jane Doe testified the Defendant engaged in sexual intercourse with her while she was a minor either before, during or after an interstate trip in which Defendant was charged with transporting each Jane Doe across state lines.  At trial, the defense contended the Jane Does were not transported across state lines for sexual purposes, but for reasons unrelated to sexual activity.

During trial, the Defendant demanded to review all FBI FD-302s of witness interviews, alleging there were "numerous interviews by law enforcement" that should have been documented in an FBI FD-302 but had not been made available to the defense.  The government responded that it had provided the defense with all existing FBI FD-302s prior to trial.  The District Court denied the defense's request that the government produce additional FBI FD-302s.

The jury convicted Defendant on all ten counts of the Second Superseding Indictment (Document 108).  Defendant was remanded to the custody of the United States Marshal pending sentencing.  A presentence investigation report was ordered.  A sentencing date will be scheduled after completion of the presentence investigation report.

Defendant filed a Motion for New Trial (Document 109) on July 31, 2009, alleging the District Court made numerous errors warranting a new trial.  The government opposes this motion and argues the Defendant's grounds for a new trial are meritless.

## II.   ARGUMENT AND LEGAL AUTHORITY

A district court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed.R.Crim.P. 33.  The decision for a new trial is within the sound discretion of the trial court. While the district court's discretion is quite broad, there are limits to it.  United States

v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand. United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008) (*citing* United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002)). Motions for new trials based on the weight of the evidence are generally disfavored. United States v. Bertling, 510 F.3d 804 (8th Cir. 2007).

One of Defendant's arguments for a new trial appears to be there is insufficient evidence of Defendant's intent to transport each Jane Doe in interstate commerce to sustain a conviction. In support of this contention, Defendant alleges the evidence at trial was as follows:

- **Count One**: "[Jane Doe #1] testified that she was not supposed to go on the trip to California . . . she testified she did not really know why she was going, but Alys Ondrisek testified it was their idea to go on the trip, not Tony Alamo's."

- **Count Two**: "Sex was never alleged to have occurred on this trip. There was no evidence showing the dominant purpose was for immoral purposes with [Jane Doe #1]."

- **Counts Three and Four**: "There is no evidence the purpose of the trip was for sex."

- **Count Five**: "[Jane Doe #3's] mother . . . testified as to the reasons for [Jane Doe 3#'s] transportation, which did not include sexual activity."

- **Count Six**: "The testimony concerning the 1999 trip to Nashville, Tennessee established that the purpose for the travel was to look at real estate and visit Mr. Alamo's sick brother....In addition, Mr. Alamo got permission from his probation

        officer to travel with [Jane Doe #3] and [Defendant] set forth the purposes of the travel on the travel request form."

- **Count Seven**: "There was no evidence of sex on this trip" and the purpose of the "trip had to do with legal matters."

- **Counts Eight and Nine**: "There was no evidence of any sex on this trip. Sandford White, Angel Morales, and Sharon Alamo confirmed that a trip from Fort Smith to Memphis never occurred."

- **Count Ten**: "There is absolutely no evidence Tony did anything to require [Jane Doe #5] to come to California or return to Fouke from California."

The official transcript from the entire trial is not yet available. Therefore, the government cannot cite with complete accuracy the testimony adduced at trial. The government is cognizant that the Court took notes throughout the trial. Accordingly, the government defers to the Court's notes as well as the court reporter's notes and forthcoming trial transcript to establish the trial testimony. For the purposes of this response, however, the government contends that Defendant has incorrectly summarized the evidence in his Motion for New Trial and erroneously claims there was insufficient evidence of Defendant's intent to engage in illegal sexual activity to transport each Jane Doe across state lines for sexual purposes.

      The government maintains that each Jane Doe testified that Defendant engaged in a sexual relationship with her that included sexual intercourse before, during or after the interstate transportation charged in Counts One through Ten of the second superseding indictment. From the testimony of each Jane Doe, the jury could properly find that the Defendant's intent to

transport the minor females in interstate commerce was to initiate and/or continue an established sexual relationship with them.

Contrary to Defendant's assertion, the government submits the following sufficiently established Defendant's intent to transport the minor females across state lines for sexual purposes: Jane Doe #1 testified in reference to Count One that Defendant engaged in sexual intercourse with her while the vehicle they were traveling in crossed state lines en route from Fouke, Arkansas, to California.  Count Two included testimony the Defendant engaged in sexual intercourse with Jane Doe #1 while both Jane Doe #1 and Defendant were in California and again after Jane Doe #1 traveled across state lines to return to Arkansas from California.  Counts Three and Four included testimony the Defendant engaged in sexual activity with Jane Doe #2 both before and after Jane Doe #2's departure from the Western District of Arkansas and upon her return to the Western District of Arkansas from two separate trips to Oklahoma.  Counts Five, Six, Seven and Eight included testimony the Defendant engaged in sexual intercourse with Jane Doe #3 and Jane Doe #4 after transporting or directing the transportation of each across state lines and directing their return to the Western District of Arkansas from out-of-state trips. Count Nine included testimony Defendant engaged in sexual intercourse with Jane Doe #4 after relocating Jane Doe #4 to Memphis, Tennessee from Fort Smith, Arkansas.  Finally, Count Ten included testimony Defendant engaged in sexual intercourse with Jane Doe #5 in California after Jane Doe #5 traveled from Arkansas to California and upon her return to the Western District of Arkansas from California.

This evidence permitted the jury to find proof beyond a reasonable doubt that the Defendant transported each Jane Doe in interstate commerce for a sexual purpose as defined in the jury instructions.

The District Court instructed the jury, without objection from the defense, that "it [was] not necessary for the government to prove that illicit sexual activity was the only, or sole, purpose for transporting the minor across state lines." The jury was instructed as follows:

"It is not necessary for the government to prove that illicit sexual activity was the only, or sole, purpose for transporting the minor across state lines. However, the government must prove that sexual activity with the minor, which is prohibited by law, was a dominant motive of the travel. In determining whether the government has met its burden, you should keep in mind that a person may have several different motives or reasons for doing a particular act such as traveling and all such reasons may, in varying degree, prompt the act." United States v. Cole, 262 F.3d 704 (8th Cir. 2001).

Based upon the testimony at trial and the jury instruction on this issue, the jury correctly found the evidence established a dominant motive of the Defendant's interstate transportation of the minors was for sexual purposes. That verdict should not now be overturned on Defendant's claim the evidence establishing his purpose in transporting the minors was insufficient.

Defendant next asserts the Court's cumulative evidentiary rulings and procedural errors served to deny Defendant a fair trial. Specifically, Defendant argues in paragraphs 7, 8 and 9 of his Motion for New Trial that evidence of the Defendant's relationships with adult women, his control over the ministry, his tax evasion conviction, the insinuation of hiding assets, assault and

battery, corporal punishment, and Fed.R.Evid. 404(b) evidence was improperly introduced during his trial.

The evidence Defendant complains about did not deprive him of a fair trial. The evidence referenced in the Defendant's motion for a new trial was indeed relevant. Some of Defendant's relationships with adult women were mentioned by government witnesses to provide context for parties who were witnesses to elements of the charged offenses. Defendant sought a motion in limine (Document No. 96), requesting the government not reference Defendant's relationships with other women as polygamist relationships. This motion was granted and the government did not use the word polygamy at trial.

Defendant next argues the Court erred in allowing testimony about Defendant's control over the Tony Alamo Christian Ministries. Defendant's control over the ministry and its members provided evidence of Defendant's ability to transport the victims across state lines. Defendant dominated ministry members who aided and abetted the transportation of the victims in interstate commerce. Ministry members subject to Defendant's directives drove vehicles transporting the victims or held credit card accounts on which some of the interstate trips were charged. This evidence of Defendant's control of the ministry and its members was relevant under Federal Rule of Evidence Rule 401 and properly admitted.

Defendant also alleges evidence of his prior tax evasion trial was improperly admitted. Defendant's tax evasion trial was not mentioned to show bad character or suggest Defendant's guilt on the charges in the second superseding indictment. Testimony about Defendant's tax case was necessary on Counts Five, Six and Nine of the second superseding indictment. Count Five included evidence Jane Doe #3 visited Defendant while Defendant was incarcerated

following his tax evasion conviction.  During this visitation at the Bureau of Prisons in Texarkana, Jane Doe #3 testified Defendant initiated his first sexual contact with her.  Evidence of Defendant's tax case placed into context the interstate trip made by Jane Doe #4 when Defendant directed her and others to travel from Arkansas to Memphis, Tennessee, for the duration of Defendant's tax trial. Additionally, this evidence placed into context the Defendant's written request to United States Probation Officer John Mooney that Defendant be permitted to travel with Jane Doe #3 and others from Arkansas to Tennessee during Defendant's supervised release.  (Count Six).   The evidence of Defendant's tax case was properly admitted under the evidentiary theory of *Res Gestae*, which completes the story of the crime or explains relationships of the parties.

Defendant also argues prejudicial testimony about assault, battery, and corporal punishment was improperly introduced at trial.  The government contends testimony about Defendant's assaults came to light after cross-examination of one of the victims.  The response elicited during defense cross-examination should not now serve to grant Defendant a new trial.

Defendant argues in paragraph 9 of his motion for a new trial that evidence of Defendant's recorded jailhouse conversations was improperly admitted.  This evidence was exhaustively argued in pre-trial submissions and orally before the Court during trial.  The Court ruled these recorded jail telephone calls could not be admitted unless redacted to conversations relevant to the charges.  The recorded conversations were distilled to relevant portions of conversations lasting less than a total of five minutes.  The redacted conversations were reviewed by the Court *in camera* before being introduced into evidence.  The recorded conversations admitted into evidence related directly to the charged conduct, provided context to

the crimes, and demonstrated Defendant's control over the Tony Alamo Christian Ministries and its members. Accordingly, the recorded jail calls admitted into evidence were highly probative and relevant.

Defendant makes conclusory, unspecific allegations that Fed.R.Evid. 404(b) evidence was improperly admitted at his trial. The evidence Defendant suggests was improperly admitted was briefed prior to the Court issuing its pretrial rulings. The Court should resist reversing its rulings made in advance of trial.

Defendant next asserts a new trial is necessary because a statement made during the government's closing argument amounted to an impermissible comment on Defendant's election not to testify.

The Fifth Amendment to the United States Constitution forbids comment on the accused's silence. Griffin v. State of California, 380 U.S. 609, 615 (1965). In order to grant the Defendant's motion for a new trial, the Court must find the comment both improper and prejudicial to the Defendant's substantive rights. United States v. Moore, 129 F.3d 989, 993 (8th Cir. 1997). The Eighth Circuit has noted that when a prosecutor's comment to the jury is not a direct comment on a defendant's silence, the issue is whether the jury would necessarily and naturally understand the comment as highlighting the defendant's failure to testify. Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003).

In reviewing a comment similar to the one at issue, the Eighth Circuit found that such comment did not merit a new trial. In United States v. Garner, 396 F.3d 987 (8th Cir. 2005), the Court of Appeals noted "[w]e have held in more than one case that a prosecutor did not improperly comment on the defendant's failure to testify by asserting in closing argument that

the government's evidence was unrefuted or uncontradicted . . . ." Id. at 992.  In Garner, the Eighth Circuit held:

> Such a remark is improper only when the jury would naturally and necessarily take it as a comment on the defendant's failure to testify because no one other than the defendant could have refuted the evidence in question. United States v. Triplett, 195 F.3d 990, 995 (8th Cir.1999), *cert. denied*, 529 U.S. 1094, 120 S.Ct. 1735, 146 L.Ed.2d 654 (2000). In this regard, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so." United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir.1996) (emphasis in original; quotation omitted), *cert. denied*, 519 U.S. 862, 117 S.Ct. 167, 136 L.Ed.2d 110 (1996).

Id.

The comment must be evaluated in the context of the entire closing arguments and the evidence introduced at trial.  Garner, 396 F.3d at 989.  Following the logic and reasoning of the United States Supreme Court in Griffin and the Eighth Circuit in Garner, this Court should find the comment neither improper nor unfairly prejudicial to Defendant.  Taken in context, the comment conveyed that Defendant, through his attorneys, had largely not disputed the government's allegations.  The context of the statement becomes even more clear in light of the sentence prior to the disputed statement, in which the government noted "[t]he defendant has largely not disputed most of the elements that must be proven by the government beyond a reasonable doubt."  A court should not lightly infer that a prosecutor intends a remark to have its most damaging meaning, or that a jury, sitting through lengthy exhortation, will draw that meaning from a plethora of less damaging interpretations.  Garner 396 F.3d at 992 (*citing* Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).

The comment did not prejudice Defendant.  At Defendant's request, the Court instructed the jury the Defendant has the right not to testify and the jury could not consider the Defendant's decision not to testify or even discuss his exercise of that right in reaching a verdict.  The Court

also instructed the jury that the closing arguments were not to be considered evidence, but were merely arguments of counsel.

Defendant asserts in paragraphs 10 and 11 of his Motion for New Trial the Court erred in its rulings regarding the testimony of defense witnesses Jennifer Kolbek and Sue Davis. Both Jennifer Kolbek and Sue Davis asserted their Fifth Amendment right against self-incrimination.

The Sixth Amendment of the Constitution guarantees a defendant the right to call "witnesses in his favor" and present evidence on his behalf. Rock v. Arkansas, 483 U.S. 44 (1987). The right to present relevant testimony, however, is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Rock at 55, *quoting* Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046 (1973). A legitimate interest that must be accommodated is the witness's Fifth Amendment protection from self-incrimination. "It is well settled that an accused's right to compulsory process must yield to a witness's Fifth Amendment privilege not to give testimony that would tend to incriminate him or her." United States v. Jones, 512 F.3d 1007, 1008-1009 (8th Cir. 2008), *citing* United States v. Blaylock, 421 F.3d 758, 700 (8th Cir. 2005) (*quoting* United States v. Habhab, 132 F.3d 410, 416 (8th Cir. 1997)).

The government believes the defense was aware Jennifer Kolbek and Sue Davis might invoke the Fifth Amendment privilege.[1] Both Jennifer Kolbek and Sue Davis invoked their Fifth Amendment privilege when asked basic credibility questions about where and with whom they lived. The Court did not err in its handling of these witnesses. The Eighth Circuit has held

---

[1] At the time of the trial, there was an outstanding pick-up order in the state of Arkansas DHS case involving minors in the Tony Alamo Christian Ministries. Both Kolbeck and Davis were parents of minors potentially subject to the state pick-up order.

a district court is well within its discretion to strike testimony from the record under circumstances similar to that in the present case.  *See* Culkin v. Purkett, 45 F.3d 1229 (8th Cir. 1995); United States v. Doddington, 822 F. 2d 818 (8th Cir. 1987); United States v. Silverstein, 732 F.2d 1338 (7th Cir. 1984); and United States v. Cardillo, 316 F.2d 606 (8th Cir. 1963).

Defendant alleges the District Court committed error by denying Defendant's Rule 29 motion on Count Two of the second superseding indictment.  Offenses charged in the second superseding indictment are "continuing offenses," as defined in Title 18, United States Code, Section 3237.  Accordingly, offenses involving interstate transportation "may be inquired of and prosecuted in any district from, through, or into which such . . . person moves."  18 U.S.C. § 3237(a).  The District Court properly denied Defendant's Rule 29 motion, recognizing that venue for the offense charged in Count Two of the second superseding indictment was proper in the Western District of Arkansas because it was the venue into which Jane Doe #2 was transported from the state of California.

### III.   CONCLUSION

Based upon the argument and legal authority cited herein, the government submits Defendant received a fair trial and no single nor cumulative error occurred that warrants overturning his conviction and ordering a new trial.

                                                                    Respectfully submitted,

                                                                    DEBORAH GROOM
                                                                    UNITED STATES ATTORNEY

                        By:     /s/ *Kyra E. Jenner*
                                                  Kyra E. Jenner
                                                  Assistant U. S. Attorney
                                                  Arkansas Bar No. 2000041
                                                  P. O. Box 1524
                                                  Fort Smith, AR 72902
                                                  Telephone: 479-783-5125

## CERTIFICATE OF SERVICE

     I, Kyra E. Jenner, Assistant United States Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed on August 13, 2009, with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Don Edward Ervin
Attorney at Law

Jeffrey Scott Harrelson
Attorney at Law

Phillip E. Kuhn
Attorney at Law

                                                  /s/ *Kyra E. Jenner*
                                                  Kyra E. Jenner
                                                  Assistant U.S. Attorney