IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**UNITED STATES OF AMERICA**                                                                       **RESPONDENT**

v.                                          No. 4:08-cr-40020
                                              No. 4:12-cv-4060

**BERNIE LAZAR HOFFMAN**                                                                     **MOVANT**

## ORDER

**BEFORE** the Court is Movant's Motion to Expand the Record Pursuant to 2255 Rule 7. ECF No. 211.  The Government has responded.  ECF No. 213.

Movant seeks to expand the recording in this Section 2255 proceeding by including the following categories of materials:  (1) Arkansas State Police documents allegedly reflecting the efforts by a third party, "S.G.," in encouraging the prosecution of the Movant; (2) documents allegedly reflecting the involvement of the Wellspring Center in offering counseling to the victims in this case during the prosecution; and (3) Requests for Admission from a civil case allegedly reflecting the victims's discussion of possible restitution with government officials during the prosecution.  Movant claims all of the foregoing should have been disclosed as *Brady* material during the underlying prosecution of Movant.  The Government contends none of these documents reveal any evidence which would have been favorable to the Movant during his criminal trial and therefore same are not relevant in this Section 2255 proceeding.  I have reviewed all of the proffered materials.

**1. Discussion**

In general in a § 2255 proceeding, if the Motion is not dismissed summarily, the court "may direct the parties to expand the record by submitting additional materials relating to the motion." 28 U.S.C. § 2255, Rule 7(a). Expansion of the record is "less likely" needed in proceedings pursuant to § 2255 than in ordinary habeas proceedings. *See* Note to 28 U.S.C. § 2255, Rule 7. Further, the purpose of expanding the record under Rule 7 is to enable the judge to dispose of some *habeas* petitions not dismissed on the pleadings without the time and expense required for an evidentiary hearing. *See* Note to 28 U.S.C. § 2254, Rule 7 (also applicable to Rule 7 in § 2255 proceedings).

I will address each category of documents Movant identifies in his motion to expand the record.

**A. Arkansas State Police Documents**: Movant proffers state police documents allegedly reflecting the efforts by a third party, "S.G.," in encouraging the prosecution of the Movant. Movant claims there is "missing impeachment" evidence contained in the proffered materials from law enforcement. ECF No. 211-1. He claims the investigating law enforcement agencies had regular contact with S.G. and allowed her to have active involvement in the investigation. Several emails in the materials purport to show S.G. provided names of possible witnesses to law enforcement and "pushed them to arrest Movant." S.G. also allegedly met with witnesses before law enforcement had chance to interview them. Movant states his lack of access to this material at trial prevented him from being able to impeach these witnesses.

The Government contends there is no exculpatory evidence, or *Brady* material, in any of these documents. The Government does not address the precise issue of impeachment however, which can be *Brady* material.

The *Brady* rule is based on the requirement of due process. Its purpose is to ensure that a miscarriage of justice does not occur. *See United States v. Bagley*, 473 U.S. 667, 675 (1985). A prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *See id.* It is clear that impeachment evidence as well as exculpatory evidence may fall within the scope of *Brady*. *See id.* at 676.

> When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady*]. We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict....' A finding of materiality of the evidence is required under *Brady*....

*Giglio v. United States*, 405 U.S. 150, 154 (1972). The standard of whether a new trial should be granted, or relief under § 2255 is whether "the false testimony could ... in any reasonable likelihood have affected the judgment of the jury...." *See id.* (discussing standard for new trial).

A review of the Arkansas State Police documents shows there is no strictly exculpatory evidence. It is possible the Movant could have attempted to impeach various witnesses with some of this evidence, however, Movant's trial counsel cross examined the witnesses for the Government (including the victims of his crimes) extensively about with whom, when, and where they met to discuss their trial testimony. The witnesses were cross examined extensively about their communications with each other, and were cross examined closely about all aspects of their trial preparation. Some of the witnesses were cross examined about their use of social media. They were cross examined about their Grand Jury testimony and their review of that testimony in preparation for trial. The witnesses were cross examined in connection with their contact with the Arkansas State Police. The victims themselves were questioned in great detail about where they went and who

they talked to after they left Movant's home. In fact at one point during the cross examination of Desiree Kolbeck, defense counsel states "'m just trying to find out who you talked to about the case." ECF No. 144-1, pp 126-127.

Cross examination revealed the victims talked to law enforcement agents on multiple times during the investigation and in preparing for trial. Defense counsel went to great lengths to attempt to show the victims's stories were fabricated. The jury did not believe this defensive theory. Because of the nature of the investigation and the number of times the victims were interviewed by law enforcement or social welfare officers, any initial discussion prior to meeting with law enforcement, with S.G. would have been inconsequential. It is clear from the nature of the cross examination actually performed by defense counsel, that even if the allegations Movant now makes were true about the activities of S.G., there is no "reasonable likelihood" such additional cross examination would have effected the judgment of the jury. Defense counsel fully and completely cross examined both witnesses and victims, there is no need to supplement the record in this regard.

**B. Wellspring Center:** Movant asserts three of the victims in this case attended the Wellspring Retreat and Resource Center in December 2008. He claims Wellspring records and information about the fees paid to Wellspring were not disclosed to him despite a specific request for the Government to do so. Movant, through counsel, says he now has these records which include information regarding group counseling sessions involving "anti-cult" items which "would have been useful in cross examination." The Government contends it disclosed to Movant the counseling received by three of the victims at the Wellspring Center. Further, District Judge Harry F. Barnes denied Movant's request (ECF No. 76), to disclose psychiatric and mental health records of the victims, prior to the criminal trial. ECF No. 96 (minutes of hearing held on July 10, 2009).

In addition to the trial court determining this issue prior to the criminal trial, the victims' treatment at the Wellspring Center was no secret. Movant's counsel cross examined the witnesses thoroughly on this issue. For example, Movant's counsel cross examined Desiree Kolbeck as follows:

> Q All right. I want to talk to you a moment about some of the benefits that you might have received from the government prior to your testifying today. You were given counseling at Wellspring, I believe, in Ohio?
>
> A Yes, I was.
>
> Q And the government paid $5000 for your two weeks of counseling?
>
> A Yes, sir.
>
> Q Were you in - did you and Ms. Orlando and Ms. Eddy go to counseling at the same time?
>
> A Yes, we did.
> . . .
> Q Okay. It was an in-house counseling program; wasn't it?
>
> A Yes, it was.
>
> Q So you were there 24-hours a day for two weeks?
>
> A Well, it was separate, I mean, it was separate counseling. We had workshop which was watching videos during the day, which we all did together, but we had separate counseling with the actual counselor separately.
> . . .
> Q All right. Did you have group counseling sessions together?
>
> A Once.
>
> Q Once? And how long did that group counseling session last?
>
> A I would say maybe an hour.

>   Q All right.  And did you discuss, did you and Ms. Orlando and Ms. Eddy discuss your background and what you allege happened at the church in that group session?
>
>   A No, we were not allowed to.
>
>   Q Did you discuss at that time the upcoming trial and what you anticipated your testimony was going to be?
>
>   A We were not allowed to.
>
>   Q You didn't compare any notes with Ms. Orlando or Ms. Eddy at Wellspring?
>
>   A No, I did not.
>
>   Q And did the programming include any kind of hypnosis?
>
>   A No, it did not.
>
>   Q All right. I believe you were also, have also been furnished by the United States Attorney's Office toiletries, pillow, blanket, magazines, candy, gun and mints that were purchased by the United States Attorney's Office.
>
>   A Yes.

ECF No. 144-1, p. 94-96.

Clearly, Movant was aware of the counseling received by several of the victims and just as clearly he was able to cross examine them about this counseling.  There is no need to expand the record in this regard as the Court will be able to examine the record of the trial and of Movant's trial counsel to determine if there is merit to Movant's claims in this regard.

**C.  Civil Suit or Restitution**:  Finally, Movant requests permission to expand the record in this case to include responses to requests for admission made by the victims regarding restitution and the possibility of a civil law suit with Government officials prior to the criminal trial.  Movant says these discussions were never disclosed by the Government and were denied by the victims at trial.

The Government indicates (1) it had an obligation under the law to inform victims of their right to restitution, and (2) point out the responses to admission show the victims ***deny*** any discussions with Government officials of a possible civil suit for damages.

First, a review of the materials Movant wants to include in the record on this issue, clearly indicate the victims each deny any discussion with government officials regarding a possible civil law suit against Movant. Additionally Movant's counsel questioned the victims at the trial about this issue on cross examination. The victims denied such communication in their testimony. Movant's contention such discussion took place is simply not accurate.

Second, under the Victim's Rights and Restitution Act and the Crime Victim's Rights Act, the Government had an obligation to inform the victims of the possibility of restitution in this case. *See*, 42 U.S.C. § 10607 and 18 U.S.C. § 3771. It is clear from the trial record, Movant's counsel was aware of the services provided the victims by the Government as there was specific cross examination on these issues. There is no need to expand the record in this regard.

**IT IS THEREFORE ORDERED**, Movant's Motion to Expand the Record Pursuant to 2255 Rule 7 (ECF No. 211) is **DENIED**.

**DATED** this **8th day of August 2014.**

    /s/ Barry A. Bryant  
HON. BARRY A. BRYANT  
UNITED STATES MAGISTRATE JUDGE